# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN WILSON and TONYA WILSON,<br>Plaintiffs,<br><br>v.<br><br>GREAT AMERICAN INSURANCE<br>GROUP,<br>Defendant. | CIVIL ACTION<br><br><br><br><br>NO. 12-5700 |

DuBOIS, J.                                                                           October 25, 2013

## MEMORANDUM

### I. INTRODUCTION

Plaintiffs, Shawn and Tonya Wilson, have petitioned the Court to compel defendant Great American Insurance Group (Great American) to arbitrate an underinsured motorist claim in accordance with the arbitration provisions of an insurance policy. Presently before the Court is defendant's Motion for Summary Judgment on Behalf of Great American Insurance Company. The sole issue presented by defendant's Motion is whether the applicable statute of limitations bars plaintiffs' claim. For the following reasons, the Court denies Great American's Motion for Summary Judgment and grants Shawn and Tonya Wilson's Petition to Compel Arbitration. The parties are directed to proceed to arbitration in accordance with the terms of their agreement.

### II. FACTUAL BACKGROUND[1]

On September 25, 2006, an automobile driven by Luz Mendoza struck Shawn Wilson, while he was driving a motor vehicle owned by the Police Athletic League (PAL) of Philadelphia. Def.'s Mot. for Summ. J. Ex. A. At the time of the accident, Mendoza's vehicle

---

[1] The following facts are undisputed. Although the Court cites to the exhibits appended to defendant's Motion, plaintiffs submitted the identical documents as appendices to Petitioners Shawn Wilson and Tonya Wilson's Response to the Respondent's Motion for Summary Judgment.

was insured by GEICO Insurance Co. (GEICO), whose policy provided for $15,000 in liability coverage. Def.'s Mot. for Summ. J. Ex. B. Mr. Wilson's vehicle was insured by Great American, whose policy provided underinsured motorist coverage for any authorized occupant of the vehicle.[2] Def.'s Mot. for Summ. J. ¶ 4. Mr. Wilson also had insurance coverage through Allstate Insurance Co. (Allstate) for his personally owned motor vehicle. Def.'s Mot. for Summ. J. Ex. D.

On April 30, 2008, Mr. Wilson's counsel faxed Great American a letter, which stated, *inter alia*:

> Since our telephone conversation yesterday, I have received telephone communication from GEICO Insurance Company, carrier for the Tortfeasor Luza Mendoza, whose SUV collided with the Neon which Mr. Wilson was operating. GEICO has verbally tendered its insurance policy limits of coverage in the amount of $15,000 to Shawn Wilson relative to his claims against this Tortfeasor.
>
> Accordingly, at this time, preliminarily, I seek Authorization from Great American Insurance Company to accept the tendered $15,000 policy limits of Luz Mendoza, with a view towards prosecuting a claim for UIM benefits under the PAL policy, if such coverage exists.

*Id.* On June 9, 2008, Great American, as requested, "g[ave] written authorization to accept he underlying policy limits." Def.'s Mot. for Summ. J. Ex. C. By letter dated June 16, 2008, Mr. Wilson's counsel responded to Great American, stating that he was "in receipt of [Great American's] June 9, 2008 correspondence . . . giv[ing] written authorization to accept the underlying policy limits," but that prior to Mr. Wilson doing so, he was "also awaiting the authorization of Allstate Insurance Company." *Id.*

By letter dated August 25, 2008, Allstate "den[ied] underinsured motorist coverage to Shawn Wilson." Def.'s Mot. for Summ. J. Ex. E. In response, Mr. Wilson's counsel sent

---

[2] Neither party disputes that Mr. Wilson was authorized to drive this vehicle.

Allstate a second letter, dated September 5, 2008, renewing his prior request for authorization. Def.'s Mot. for Summ. J. Ex. G. On September 15, 2008, Allstate responded that "there [was] no need for Mr. Wilson to obtain Allstate's consent to settle the underlying tort claim" because Allstate's policy did not provide Mr. Wilson with underinsurance coverage. Def.'s Mot. for Summ. J. Ex. H. On September 17, 2008, Mr. Wilson signed a release of claims absolving Mendoza from further liability. Def.'s Mot. for Summ. J. Ex. I.

On September 13, 2012, plaintiffs brought suit to compel arbitration in the Philadelphia Court of Common Pleas. Def.'s Mot. for Summ. J. Ex. J. After removing the action to federal court, defendant moved for summary judgment on the ground that plaintiffs' claim is time-barred. Although neither party disputes that the statute of limitations is four years from the date that Mr. Wilson settled with the tortfeasor, defendant takes issue with plaintiffs' assertion that the date of settlement is the date of the signed release, September 17, 2008. Defendant argues that plaintiffs' underinsurance claim accrued on April 30, 2008, the date that GEICO verbally tendered its insurance policy limits of coverage in the amount of $15,000.

### III. LEGAL STANDARD

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." *Id.* In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary

judgment." *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is appropriate if a plaintiffs' cause of action is barred by the statute of limitations. *See Hersh v. Allen Prods. Co.*, 789 F.2d 230 (3d Cir. 1986).

## IV. DISCUSSION

The parties agree that Pennsylvania's four-year statute of limitations for contractual actions, established by 42 Pa. Const. Stat. § 5525, governs this case, but they disagree as to when plaintiffs' cause of action accrued. The Pennsylvania Supreme Court has not spoken on the issue of when the four-year statute of limitations begins to run in an underinsurance case such as this one. When the Pennsylvania Supreme Court has not spoken on an issue, a federal court sitting in a diversity action is required to predict how the Supreme Court would rule. *Paolella v. Browning-Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir. 1998). In resolving that question, the district court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (quoting *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)). "[P]roper regard must also be given to the decisions of [Pennsylvania's] intermediate appellate court." *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991).

In *State Farm Mutual Automobile Insurance Co. v. Rosenthal*, the Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would hold that "the four-year statute of limitations begins to run [on an underinsurance claim] when the insured settles his claim with or obtains an award from the underinsured driver." 484 F.3d 251, 256 (3d Cir. 2007).

4

Recently, the Superior Court of Pennsylvania, in *Hopkins v. Erie Insurance Co.*, agreed with the *Rosenthal* court and held that the "statute of limitations on underinsured motorist claims begins to run when the insured settles with, or secures a judgment against, the underinsured owner or operator." 65 A.3d 452, 459 (Pa. Super. 2013). Although defendant accepts that plaintiffs' underinsurance claim accrued on the date that Mr. Wilson settled with Mendoza, it argues that "none of the cases suggest that the date of the release is determinative of the exact date that a matter is 'settled.'" Rep. Br. of Great Am. Ins. Co. in Further Supp. of Mot. for Summ. J. at 2.

The Court agrees with plaintiffs that the date of settlement in this case is September 17, 2008, which is the date of the signed release. First, defendant is incorrect that neither the Third Circuit for the Court of Appeals nor any Pennsylvania state court has held that the date of the signed release constitutes the date of settlement. In *Hopkins v. Erie Insurance Co.*, cited as authority by both plaintiffs and defendant, the Superior Court of Pennsylvania held that the statute of limitations for the appellants' underinsurance claim accrued on the date that the appellants released the tortfeasor of further liability in the underlying action. 65 A.3d at 459. In doing so, the Pennsylvania Superior Court refused to find that the date of settlement was the date that the appellants sent a letter to their insurer "asking for permission to settle with the tortfeasor" or the date that the insurer wrote a "response granting permission for Appellants to settle." *Id.* at 454, 459.[3] Thus, given that it squarely addressed the question of when the underlying action should be deemed "settled" for statute-of-limitations purposes, the Superior Court of Pennsylvania, in *Hopkins*, cast considerable doubt[4] on any prior federal or state lower-

---

[3] In *Hopkins*, there was no evidence in the record as to the date on which the tortfeasor tendered a settlement offer.
[4] *See Aceto v. Zurich Ins. Co.*, 440 F.2d 1320, 1322 (3d Cir. 1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as

5

court opinion in tension with *Hopkins*'s holding.[5]

Moreover, the Court concludes that it makes little legal or practice sense for the date of settlement to be that on which the tortfeasor tenders an offer of settlement, rather than the date of the signed release. It is a matter of "[b]asic contract law . . . that in order to constitute a contract there must be an offer on one side and an acceptance on the other." *Cawthrone v. Erie Ins. Grp.*, 782 A.2d 1037, 1038 (Pa. Super. 2001). Thus, to become a binding settlement, an offer must be met with a manifestation of acceptance, such as a signed release. Additionally, to treat a tortfeasor's mere offer of settlement, even when for the tortfeasor's full available policy limits, as a "binding and enforceable . . . oral agreement," Def.'s Mot. Summ. J. at 8, would subvert the sole point of consent-to-settlement provisions: to give insurers an opportunity to exercise their subrogation rights *prior* to the formation of binding settlement agreements. *See, e.g.*, *Archer v. State Farm Ins. Co.*, 615 A.2d 779, 783 (Pa. Super. 1992) (explaining that the purpose of a

---

the Pennsylvania Supreme Court has not ruled upon that legal question."); *Sweitzer v. Oxmaster, Inc.*, No. 9-cv-5606, 2010 WL 5257226, at *4 (E.D. Pa. Dec. 23, 2010) ("Of course, the Court must follow the Court of Appeal's prediction of Pennsylvania law as a general rule, except when the state's highest court issues a decision contradicting that prediction or state intermediate appellate court's decisions subsequently indicate that prediction has not come to pass."); *Carrasquilla v. Mazda Motor Corp.*, 197 F. Supp. 2d 169, 173 (M.D. Pa. 2002) ("The Third Circuit has not given very much guidance on the subject, but has suggested that the only law that is binding on a federal court is the jurisprudence of the state supreme court, and that even a decision by a federal court of appeals does not bind a district court." (quoting *Hittle v. Scripto-Tokai Corp.*, 166 F. Supp. 2d 159, 162 (M.D. Pa. 2001))).

[5] In particular, it is unclear whether and to what extent *Hopkins* is in tension with *State Farm v. Rosenthal*, 484 F.3d 251 (3d Cir. 2007). Specifically, the *Rosenthal* court could not have been referencing the date of the signed settlement release in concluding that "Rosenthal settled his claim against the adverse driver in 2003," *id.* at 257, because the record was silent as to when the release was signed. Although, in that case, amicus very briefly mentioned at oral argument the difficulty of defining the date of settlement, *see* Oral Argument, *Rosenthal*, 484 F.3d 251 (No. 06-2158), *available at* http://www.ca3.uscourts.gov/oral-argument-recordings, the issue of when the appellee settled was neither briefed, nor the focus of the appeal. *See* Br. of Appellee at 3-4, 12, *Rosenthal*, 484 F.3d 251 (No. 06-2158) (taking for granted that the date of settlement was July 9, 2003, the date that Rosenthal sent a letter to State Farm seeking consent to accept the tortfeasor's settlement offer).

consent-to-settle clause is to protect the subrogation rights of the insurer because "an insured [may] nullif[y] an insurer's ability to enforce its subrogation rights . . . by settling with and releasing an alleged tortfeasor").

Finally, in determining that the date of settlement is the date on which Mr. Wilson accepted the offer to settle his underlying claim by signing the release, September 17, 2013, the Court notes that the record is devoid of support for the proposition that Mr. Wilson entered into a binding settlement agreement with Mendoza before that date. Defendant's only evidence that an oral settlement agreement predated the signed release is the April 30, 2008 fax from Mr. Wilson's counsel to Great American, seeking Great American's consent to settle Mr. Wilson's underlying tort claim in light of the fact that, in the past day, "GEICO . . . [had] tendered its insurance policy limits of coverage." Def.'s Mot. for Summ. J. Ex. D. Not only is this language plainly inconsistent with the existence of any binding settlement agreement,[6] but, in other contexts, courts have rejected the argument that a claimant is deemed to have accepted a tortfeasor's settlement offer by advising the carrier of the settlement offer and requesting waiver of the carrier's subrogation rights. *Cawthorne*, 782 A.2d at 1038. Without evidence of a prior binding agreement, oral or otherwise, the Court must conclude that the settlement took place on September 17, 2008, the date on which Mr. Wilson signed the release absolving Mendoza from further liability.

V. **CONCLUSION**

The Court finds that plaintiffs' action to compel underinsured motorists arbitration

---

[6] In fact, Mr. Wilson's counsel could not have been clearer that his client had yet to accept GEICO's settlement offer of Mendoza's policy limits. Mr. Wilson's counsel stated that he was awaiting authorization "to accept" Great American's settlement offer, and nothing about the word "tender" suggests a consummated agreement. *Black's Law Dictionary* 1606 (9th ed. 2009) (defining "tender" as "[a] valid and sufficient *offer* of performance" (emphasis added)).

7

accrued on September 17, 2008.  Plaintiffs then had four years from that date within which to file their petition to compel arbitration.  Since plaintiffs filed their petition on September 13, 2012, this action is not barred by the statute of limitations.  Accordingly, the Court concludes that plaintiffs' claim should be submitted to arbitration pursuant to the arbitration provisions of defendant's insurance policy covering the motor vehicle operated by Mr. Wilson at the time of the accident at issue.  An appropriate order follows.